### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 05 B 42371 |
| | ) | Chapter 7 |
| ROBERT JAMES FINK, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | |
| —————————————————— | ) | |
| BACCALA REALTY, INC. | ) | Adversary No. 06 A 00903 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT JAMES FINK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Baccala Realty, Inc. (the "Creditor") for judgment on the pleadings pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(c). For the reasons set forth herein, the Court grants the motion with respect to Counts I and III of the complaint objecting to the discharge of Robert James Fink (the "Debtor"), and denies his discharge pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(4)(A). A status hearing on Count II of the complaint is set for September 29, 2006 at 10:00 a.m.

-2-

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## II. FACTS AND BACKGROUND

The Debtor filed a Chapter 7 bankruptcy petition on September 30, 2005.[1]  The Debtor is an orthopaedic surgeon. The Creditor is listed on the Debtor's Schedule D as holding a non-contingent, liquidated, and undisputed general secured claim in the sum of $4,900,000.00 against the Debtor arising from a guaranty of a business loan with respect to an outpatient surgical facility. (Complaint ¶ 3; Answer ¶ 3.)

The Debtor admitted several pertinent facts in his answer to the complaint. In particular, the Debtor admitted that his statement of Financial Affairs lists his income for the year 2003 as $37,851.00, but that his W-2 form for 2003 from Ashland Physicians Center ("Ashland"), an entity that the Debtor has owned, operated, or worked for in the past, lists

---

[1]  This is the Debtor's fourth bankruptcy case in the past four years. The first, a Chapter 13 case, was filed on April 24, 2002, in the Southern District of Florida (02-32181-BKC-SHF). (Complaint ¶ 4; Answer ¶ 3.) That case was dismissed on August 20, 2002, with a 180-day bar to refiling another bankruptcy case. (*Id.*) Subsequently, on September 23, 2002, the Debtor filed his second Chapter 13 case in the Northern District of Illinois (02 B 36819). (Complaint ¶ 5; Answer ¶ 3.) That case was dismissed on October 1, 2002, with a 180-day refiling bar. (*Id.*) The Debtor's third Chapter 13 bankruptcy case was filed in this District on March 7, 2003 (03 B 10371). (Complaint ¶ 6; Answer ¶ 3.) The Court takes judicial notice of the records in its own cases and notes from the docket in this case that on July 30, 2003, the Debtor's motion to voluntarily dismiss his third case was granted. (Docket Entry No. 33.) In addition, the court entered a 180-day bar to refiling another case. (*Id.*) The Debtor's fourth and instant case was thereafter filed on September 30, 2005 (05 B 42371).

·3·

his income for that year as $55,350.00.  (Complaint ¶ 10; Answer ¶ 6.)  In addition, the

Debtor admitted that the Statement of Financial Affairs lists his income for the year 2004 as

$36,000.00, but that the 1099 statement from Ashland reflects income for that same year as

$48,000.00.  (Complaint ¶ 11; Answer ¶ 6.)

Further, the Debtor acknowledged that in paragraph eighteen of his Statement of

Financial Affairs, he did not list any ownership interests in any business entities in the six

years preceding this bankruptcy filing.  (Complaint ¶ 12; Answer ¶ 6.)  In particular, the

Debtor admitted that he failed to disclose his ownership interest in Ashland in his Statement

of Financial Affairs or in his Schedules.  (Complaint ¶ 14; Answer ¶ 8.)  Additionally, the

Debtor owns a one hundred percent interest in Lake Physicians Center, LLC ("Lake"), a

medical group in which the Debtor practiced.  (Complaint ¶ 15; Answer ¶ 8.)  Lake is a

member of Lakeview Ambulatory Center, LLC ("Lakeview"), an Indiana limited liability

company that operated an outpatient surgery center in Hammond, Indiana until January 2005.

(*Id.*)[2]  The Debtor admitted that he has received a percentage of certain receivables from

Lakeview since the filing of his bankruptcy case.  (Complaint ¶ 18; Answer ¶ 12.)  The

Debtor also acknowledged that he failed to disclose any ownership interest in Lake in his

Statement of Financial Affairs or Schedules.  (Complaint ¶ 19; Answer ¶ 12.)

Moreover, the Debtor admitted that he formerly owned one hundred percent of the

stock of Robert Fink M.D. S.C.  (Complaint ¶ 20; Answer ¶ 12.)  Nevertheless, the Debtor

failed to disclose any ownership interest in Robert Fink M.D. S.C. in his Statement of

---

[2]  Lakeview filed a voluntary Chapter 11 petition in March 2005, in the Northern
District of Indiana.  (Complaint ¶ 16; Answer ¶ 8.)

·4·

Financial Affairs or in his Schedules even though as of the end of the 2002 tax year, that entity had assets totaling approximately $200,000.00 based on that entity's 2002 income tax return. (Complaint ¶ 21; Answer ¶ 12.) The Debtor also admitted that he failed to disclose that he was the trustee and sole beneficiary of the Robert Fink 1997 revocable trust until March 27, 2002. (Complaint ¶ 22; Answer ¶ 12.) That trust owned a condominium in Palm Beach, Florida, which was transferred for little or no consideration on March 27, 2002, to an entity controlled by the Debtor's father, Dr. Victor Fink. (*Id.*)

The Debtor acknowledged that he issued several checks totaling $52,500.00 from Lake's checking account made payable to himself, and that he negotiated such checks over a period of eight months prior to filing this bankruptcy. (Complaint ¶ 25; Answer ¶ 14). The Debtor failed to list any of these payments in his Statement of Financial Affairs or Schedules. (Complaint ¶ 26; Answer ¶ 14.) In addition to these checks written to himself, the Debtor admitted that he issued checks from Lake's checking account made payable to (1) his wife for $30,000.00 in May 2005 for household expenses; (2) his father for $28,000.00 in June 2005; and (3) the Chicago Bears for $1,600.00 in April 2005 for 2005 season tickets. (Complaint ¶ 27; Answer ¶ 14.)

The Debtor also admitted that he currently owns an entity he described as the Michigan Street Venture, which apparently owns or invests in Marriott hotels. (Complaint ¶ 29; Answer ¶ 16.) The Debtor failed to list this entity in his Statement of Financial Affairs or in his Schedules. (*Id.*) The Debtor acknowledged that he earns $600.00 from this investment entity but was uncertain whether those earnings were monthly, semi-annually, or

-5-

annually.  (Complaint ¶ 30; Answer ¶ 16.)  The Debtor failed to list any income from the Michigan Street Venture in his Statement of Financial Affairs or in his Schedules.  (*Id.*)

On December 16, 2005, the Court entered an order that required the Debtor to provide documents in connection with a Federal Rule of Bankruptcy Procedure 2004 examination.  (Complaint ¶ 45; Answer ¶ 26.)  On February 1, 2006, the Debtor produced a partial response to that request.  (Complaint ¶ 46; Answer ¶ 26.)  At the Bankruptcy Rule 2004 examination, the Debtor testified that he no longer possesses the billing information for his work performed at Lake; that he no longer possesses the billing information for his work performed for Ashland; that he no longer possesses the documentation for the Robert Fink 1997 revocable trust for which he was the trustee and sole beneficiary; that he does not possess any documents with respect to the Michigan Street Venture, nor can he recall or document if he receives $600.00 monthly, semi-annually, or annually from this venture; that he was unable to produce bank records for accounts at LaSalle Bank for the periods after the bankruptcy petition date and for periods prior to the petition date; that he was unable to produce bank records or tax returns for Ashland; that he was unable to produce bank records for the Lake checking account prior to January 1, 2005, or any tax returns for Lake; that he was unable to produce tax returns for any year other than 2002 for Robert Fink M.D. S.C.; that he was unable to produce any of the corporate or organizational documents for Ashland, Lake, or Robert Fink M.D. S.C.; and that he was unable to produce any documents in connection with the transfer of his ownership interest in Ashland to his father.  (Complaint ¶ 47b-47k; Answer ¶ 28.)

-6-

On April 3, 2006, the Creditor filed this adversary proceeding. The Creditor alleges in the three-count complaint that the Debtor's discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(3), 727(a)(4)(A), and 727(a)(5) because he made false oaths, failed to maintain proper records, and failed to account for the loss of assets. On June 2, 2006, the Creditor filed the instant motion for judgment on the pleadings. The motion only seeks judgment pursuant to Counts I and III of the complaint which invoke §§ 727(a)(4)(A) and 727(a)(3) respectively. The Creditor contends that based on the allegations admitted by the Debtor in his answer to the complaint, the Court should grant judgment in favor of the Creditor and deny the Debtor's discharge. According to the Creditor, no material issues of fact exist and judgment on the pleadings is warranted by law. The Debtor, on the other hand, maintains that the Creditor has not met its burden to establish the relief sought; that there are material issues of disputed fact precluding the relief sought; and that the Debtor's failure to disclose certain assets and his failure to keep proper records was not the result of any intentional act on his part.

On June 8, 2006, several days after the Creditor filed the motion at bar, the Debtor filed an amended Schedule B that reflects an interest in the Michigan Street Venture entity. In addition, on that same date, the Debtor filed an amended Statement of Financial Affairs that shows his interests in Ashland, Lakeview, Robert Fink M.D. S.C., and Lake, and lists his income for 2003 as -$1,109.00.

-7-

## III. APPLICABLE STANDARDS

### A.    Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c), which is incorporated by reference in Federal

Rule of Bankruptcy Procedure 7012, provides as follows:

> After the pleadings are closed but within such time as not to
> delay the trial, any party may move for judgment on the
> pleadings.  If, on a motion for judgment on the pleadings,
> matters outside the pleadings are presented to and not
> excluded by the court, the motion shall be treated as one for
> summary judgment and disposed of as provided in Rule 56,
> and all parties shall be given reasonable opportunity to
> present all material made pertinent to such a motion by Rule
> 56.

FED. R. CIV. P. 12(c).  Rule 12(c) permits a party to move for judgment after the parties have

filed the complaint and answer.  *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163

F.3d 449, 452 (7th Cir. 1998).  "The pleadings include the complaint, the answer, and any

written instruments attached as exhibits."[3]  *Id.*  The Seventh Circuit has interpreted "the term

'written instrument' as used in Rule 10(c) to include documents such as affidavits and letters,

as well as contracts and loan documentation."  *Id.* at 453 (citations omitted).  When deciding

a motion for judgment on the pleadings, a court may consider only the contents of the

pleadings.  *Alexander v. City of Chi.*, 994 F.2d 333, 335 (7th Cir. 1993); *Union Carbide Corp.*

*v. Viskase Corp. (In re Envirodyne Indus., Inc.)*, 183 B.R. 812, 817 (Bankr. N.D. Ill. 1995).

However, courts may consider documents incorporated by reference in the pleadings.  *United*

*States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).  Courts may also take judicial notice of

---

[3]  Pursuant to Federal Rule of Civil Procedure 10, made applicable by Federal Rule
of Bankruptcy Procedure 7010, "[a] copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."  FED. R. CIV. P. 10(c).

·8·

matters of public record. *Id.* Moreover, the motion may be made prior to the completion of

discovery, contrary to the arguments in the Debtor's response in opposition. *See generally*

*Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982) (noting that a Rule

12(c) disposition is appropriate after the pleadings are closed[4]); *Friedman v. Washburn Co.*,

145 F.2d 715, 717 (7th Cir. 1944) (same).

A motion for judgment on the pleadings is determined by the same standard applied

to a motion to dismiss for failure to state a claim. *Wood*, 925 F.2d at 1581; *Thomason v.*

*Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989). Pursuant to Rule 12(c), a motion for

judgment on the pleadings is properly granted if the undisputed facts appearing in the

pleadings, supplemented by any facts of which a court should take proper judicial notice,

clearly entitle the moving party to judgment as a matter of law. *Nat'l Fid. Life Ins. Co. v.*

*Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987) (*citing Flora*, 685 F.2d at 211). A moving

party must unequivocally establish that no material issue of fact exists and that judgment on

the pleadings is warranted by law. *Id. See also A.D.E. Inc. v. Louis Joliet Bank & Trust Co.*,

742 F.2d 395, 396 (7th Cir. 1984) (finding that judgment on the pleadings is appropriate only

if it is a "certainty" that the defendant is liable).

For purposes of Rule 12(c) motions, all well-pleaded allegations contained in the

non-moving party's pleadings are to be taken as true. *Gillman v. Burlington N. R.R. Co.*, 878

F.2d 1020, 1022 (7th Cir. 1989) (*citing Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d

174, 177 n.2 (7th Cir. 1986)). Thus, the Debtor's admissions in his answer to the complaint

---

[4] Federal Rule of Civil Procedure 7 prescribes when the pleadings are closed. In this matter, the pleadings were closed when the Debtor filed his answer to the complaint.

-9-

are crucial. In ruling on a motion for judgment on the pleadings, courts must view the facts

in pleadings and all inferences drawn therefrom in the light most favorable to the non-

movant. *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997); *Nat'l Fid. Life Ins.*, 811 F.2d

at 358 (*citing Republic Steel*, 785 F.2d at 177 n.2). Courts are not bound, however, by the

legal characterizations contained in the pleadings. *Nat'l Fid. Life Ins.*, 811 F.2d at 358;

*Republic Steel*, 785 F.2d at 183. Where a written instrument incorporated in the pleadings

contradicts allegations in the complaint, the exhibit "trumps the allegations." *N. Ind. Gun*,

163 F.3d at 454.

Under Rule 12(c), a court may, if it chooses, consider matters outside the pleadings

and treat the motion as if it were one for summary judgment. This alternative use of the

Rule, however, provides that the motion cannot be granted if a genuine issue of material fact

is presented under the summary judgment standards under Rule 56 and its bankruptcy

analogue, Rule 7056.

**B.     Objections to Discharge**

The discharge provided by the Bankruptcy Code is meant to effectuate the "fresh

start" goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir.

2002). In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately

and truthfully present themselves before the court. *Stathopoulos v. Bostrom (In re Bostrom)*,

286 B.R. 352, 359 (Bankr. N.D. Ill. 2002), *aff'd*, No. 02 C 9451, 2003 WL 403138 (N.D. Ill.

Feb. 20, 2003). Indeed, a discharge is only for the honest debtor. *Grogan v. Garner*, 498

U.S. 279, 286-87 (1991); *McWilliams*, 284 F.3d at 790; *In re Juzwiak*, 89 F.3d 424, 427 (7th

Cir. 1996); *In re Garman*, 643 F.2d 1252, 1257 (7th Cir. 1980). "The denial of discharge is

·10·

a harsh result." *Henbest v. Meyer (In re Meyer)*, 307 B.R. 87, 91 (Bankr. N.D. Ill. 2004).

Because the denial of a discharge is so drastic a remedy, courts may be more reluctant to

impose it than to find a particular debt non-dischargeable. *See Soft Sheen Prods., Inc. v.*

*Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) ("The denial of discharge

is a harsh remedy to be reserved for a truly pernicious debtor.").

The party objecting to a debtor's discharge has the burden of proving the objection.

FED. R. BANKR. P. 4005; *In re Martin*, 698 F.2d 883, 887 (7th Cir. 1983) (noting that "the

*ultimate* burden of proof in a proceeding objecting to a discharge lies with the plaintiff").

Objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of

debtors and strictly against objectors in order to grant debtors a fresh start. *Juzwiak*, 89 F.3d

at 427. The objector must establish all required elements of the objection by a preponderance

of the evidence. *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999). The Court rejects the

Debtor's argument in his response to the motion that the Creditor must prove its claims

against him beyond doubt.

## IV. DISCUSSION

### A.    11 U.S.C. § 727(a)(3)

First, the Creditor argues that the Debtor failed to keep or preserve financial records

from which his financial condition might be ascertained and has, thus, violated 11 U.S.C. §

727(a)(3). Specifically, the Creditor contends that the Debtor failed to keep records for his

interests in Lake, Ashland, the Robert Fink 1997 revocable trust, the Michigan Street

Venture, certain LaSalle Bank account records, Lake bank account records prior to 2005, and

-11-

the transfer of Ashland to his father. Section 727(a)(3) bars a debtor's discharge for the

failure to keep financial records and provides as follows:

> (a) The court shall grant the debtor a discharge, unless–
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3).

"The purpose of § 727(a)(3) is to make the privilege of discharge dependent on a true

presentation of the debtor's financial affairs." *Scott*, 172 F.3d at 969 (internal quotations

omitted). While this provision was not meant to bar the discharge of the ordinary consumer

debtor, *see id.* at 970, a "sudden and large dissipation of assets," coupled with a lack of books

and records will provide a basis for denial of a discharge under this section. *PNC Bank,*

*Nat'l Assoc. v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 98 (Bankr. W.D. Pa. 2000).

"Section 727(a)(3) requires as a precondition to discharge that debtors produce

records which provide creditors 'with enough information to ascertain the debtor's financial

condition and track his financial dealings with substantial completeness and accuracy for a

reasonable period past to present.'" *Juzwiak*, 89 F.2d at 427 (*quoting Bay State Milling Co.*

*v. Martin (In re Martin)*, 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992)); *see also Union Planters*

*Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002). This statute "ensures that trustees

and creditors will receive sufficient information to enable them to 'trace the debtor's

-12-

financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions.'" *Juzwiak*, 89 F.3d at 427-28 (*quoting Martin*, 141 B.R. at 995).

"Section 727(a)(3) does not require proof of criminal or quasi-criminal conduct; rather, a transfer or removal of assets, a destruction or other wasting of assets, or a concealment of assets is all the [objector] must prove." *Scott*, 172 F.3d at 969. Intent is not an element of proof under § 727(a)(3). *Connors*, 283 F.3d at 901; *Scott*, 172 F.3d at 969; *Juzwiak*, 89 F.3d at 430.

The statute places an affirmative duty on the debtor to create books and records accurately documenting his financial affairs. *Juzwiak*, 89 F.3d at 429 ("The debtor has the duty to maintain and retain comprehensible records."). Creditors are not required to accept a debtor's oral recitations or recollections of his transactions; rather, to qualify for a discharge in bankruptcy, a debtor is required to keep and produce written documentation of all such transactions. *See id.* at 429-30. The text of § 727(a)(3) does not merely require that the debtor not lose any records; it mandates a denial of discharge for the "failure to act," unless such failure to act is justifiable. *Scott*, 172 F.3d at 969; *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 879 (Bankr. N.D. Ill. 2004); *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 897 (Bankr. N.D. Ill. 2003).

A creditor has the initial burden of proving that the debtor failed to keep adequate records. *Costello*, 299 B.R. at 897; *Martin*, 141 B.R. at 995; *Calisoff v. Calisoff (In re Calisoff)*, 92 B.R. 346, 356 (Bankr. N.D. Ill. 1988). "Records are not 'adequate' if they do not provide the trustee or creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and

-13-

accuracy for a reasonable period past to present." *Martin*, 141 B.R. at 995. Every debtor has

a duty to take reasonable precautions to maintain and preserve records of their financial

transactions and affairs. *Brandt v. Carlson (In re Carlson)*, 231 B.R. 640, 654 (Bankr. N.D.

Ill. 1999), *aff'd*, 250 BR. 366 (N.D. Ill. 2000), *aff'd*, 263 F.3d 748 (7th Cir. 2001).

The completeness and accuracy of a debtor's records are to be determined on a case-

by-case basis, considering the size and complexity of the debtor's financial situation. *Cmty.*

*Bank of Homewood-Flossmoor v. Bailey (In re Bailey)*, 145 B.R. 919, 924 (Bankr. N.D. Ill.

1992). Courts should consider the sophistication of the debtor, his educational background,

his business experience and acumen, and his personal financial structure. *Costello*, 299 B.R.

at 897; *Calisoff*, 92 B.R. at 356. Neither the court nor the creditors are required to

reconstruct a debtor's financial picture by "sifting through a morass of checks and bank

statements." *Connors*, 283 F.3d at 899. Rather, it is the debtor's duty to maintain and

provide the court and the creditors with organized records of his financial affairs. *Id.*;

*Juzwiak*, 89 F.3d at 429. Courts have broad discretion in deciding whether the books and

records of a debtor are sufficient under § 727(a)(3). *Costello*, 299 B.R. at 897. This

Debtor's financial affairs were complicated and complex, thus, necessitating an attendant

duty to make and keep sufficient records to trace and disclose his multiple business and

personal financial affairs.

Section 727(a)(3) does not specify a time period for which a debtor is required to

account for his pre-petition financial condition. Several courts, however, have limited the

inquiry to a period of two years prior to the commencement of the case, absent evidence of

·14·

earlier fraudulent transfers or other avoidable dissipation of assets. *See Buzzelli*, 246 B.R.

at 96; *Losinski v. Losinski (In re Losinski)*, 80 B.R. 464, 472-74 (Bankr. D. Minn. 1987).

The Court holds that a debtor should be made to account for his business and

personal transactions for a reasonable period prior to the commencement of the bankruptcy

filing and thereafter while the case is pending. The determination of what constitutes a

reasonable period prior to the filing must be measured on a case-by-case basis, taking into

account all of the circumstances of the case.

Once the party alleging a violation under § 727(a)(3) has demonstrated that the

debtor's records are inadequate, the burden of production shifts to the debtor to justify the

lack of adequate records. *Costello*, 299 B.R. at 897; *Bailey*, 145 B.R. at 924. The Creditor

contends that the Debtor has failed to keep adequate recorded information regarding Lake,

Ashland, the Robert Fink 1997 revocable trust, the Michigan Street Venture, certain LaSalle

Bank account records, Lake bank account records prior to 2005, and the transfer of Ashland

to his father.

The Debtor, a medical doctor with an advanced degree, who organized his medical

practice into several different entities, has failed to produce sufficient books and records

from which his financial condition may be ascertained. In particular, he has admitted that

he has not produced any documentation with respect to the entities that he has an interest

in–Lake, Ashland, the Robert Fink 1997 revocable trust, and the Michigan Street Venture.

Further, he has failed to produce certain LaSalle Bank account records, Lake bank account

records prior to 2005, and the documentation with respect to the transfer of Ashland to his

father.

-15-

The Court finds that the Creditor has demonstrated that the Debtor's failure to produce these records makes it impossible to ascertain the Debtor's true financial condition and track his financial dealings with substantial completeness and accuracy. The lack of these records makes for an incomplete and inaccurate picture of the Debtor's financial situation. "[W]here debtors are sophisticated in business, and carry on a business involving significant assets, creditors have an expectation of greater and better record keeping." *Scott*, 172 F.3d at 970. The Debtor has an obligation to reveal, rather than conceal, his complete financial condition. The Court should not be required to speculate as to the financial history or condition of the Debtor, nor should the Court be compelled to reconstruct the Debtor's affairs. *See Juzwiak*, 89 F.3d at 428.

The Bankruptcy Code does not require every debtor seeking a discharge to maintain a bank account, nor does it require an impeccable system of record keeping. *Buzzelli*, 246 B.R. at 96. Nevertheless, the records must sufficiently identify the relevant transactions so that an intelligent inquiry can be made of those transactions. *Id.* In sum, the Court finds that the Creditor has demonstrated that the Debtor admittedly failed to supply records that allow the Creditor and the Court to ascertain the Debtor's financial condition.

Next, the Court must determine whether the Debtor has demonstrated that his failure to keep recorded financial information was justified under all of the circumstances of the case. The Debtor states that he is in the business of healing people, not maintaining financial records. He argues that he has accountants who keep the records that the Creditor is requesting. The Court finds that this explanation utterly fails and does not constitute an appropriate justification for the failure to keep adequate records to show the Debtor's true

-16-

financial condition.   The Debtor maintains that he no longer possesses any of the documentation requested. He contends that the Creditor can obtain some of the records it seeks through subpoena.   However, the burden is not on the Creditor to reconstruct the Debtor's financial affairs. *See Juzwiak*, 89 F.3d at 429.   As the Seventh Circuit has explained, a creditor "should not be forced to undertake an independent investigation of a debtor's affairs; rather they have a right to be supplied with dependable information on which they can rely in tracing a debtor's financial history." *Id.* (internal quotation omitted).   The Creditor is not required to produce the Debtor's financial records; rather, the Debtor must produce those records. Indeed, the Seventh Circuit has stated that the relevant evidence "is far more likely to lie in the hands of a debtor than of the creditor." *Martin*, 698 F.2d at 888. Hence, the Debtor failed to offer an adequate explanation to justify the lack of adequate records.

Consequently, the Court finds that the Debtor has violated § 727(a)(3).   Thus, the Court grants judgment under Count III of the complaint in favor of the Creditor. Accordingly, the Debtor's discharge is denied under § 727(a)(3).

**B.      11 U.S.C. § 727(a)(4)(A)**

Next, the Creditor contends that the Debtor violated 11 U.S.C. § 727(a)(4) because he failed to disclose significant assets and certain transfers on his Schedules and Statement of Financial Affairs.   Specifically, the Creditor argues that the Debtor made false statements because he failed to accurately reveal his income for 2003 and 2004.   In addition, the Creditor states that the Debtor's failure to list his interests in Ashland, Lake, Robert Fink M.D. S.C., and the Robert Fink 1997 revocable trust constitutes false oaths by omission.

·17·

Further, according to the Creditor, the Debtor's failure to disclose the $52,500.00 he received

from Lake in the eight months preceding the bankruptcy filing, as well as his failure to

disclose the existence of or the income received from the Michigan Street Venture,

establishes that he made false oaths.  Section 727(a)(4) bars a debtor's discharge if he

knowingly and fraudulently makes a false oath in connection with the case.  Specifically, §

727(a)(4) provides as follows:

> (a) The court shall grant the debtor a discharge, unless–
>     (4) the debtor knowingly and fraudulently, in
>     or in connection with the case–
>         (A)  made  a  false  oath  or
>         account[.]

11 U.S.C. § 727(a)(4)(A).

The purpose of § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure

that the debtor provides reliable information to those who have an interest in the

administration of the estate.  *Costello*, 299 B.R. at 899; *Bostrom*, 286 B.R. at 359; *Carlson*,

231 B.R. at 655; *Bensenville Cmty. Ctr. Union v. Bailey (In re Bailey)*, 147 B.R. 157, 163

(Bankr. N.D. Ill. 1992).  The trustee and the creditors have a right to information that will

allow them to evaluate the case and administer the estate's property.  *Costello*, 299 B.R. at

899.  Thus, "[c]omplete financial disclosure is a condition precedent to the privilege of

discharge." *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 359 (Bankr. N.D.

Ill. 2001); *see also Fosco v. Fosco (In re Fosco)*, 289 B.R. 78, 93 (Bankr. N.D. Ill. 2002).

In order to prevail, a creditor must establish five elements under § 727(a)(4)(A): (1)

the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the

statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the

-18-

statement related materially to the bankruptcy case. *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 745 (Bankr. N.D. Ill. 2004); *Costello*, 299 B.R. at 899; *Urological Group, Ltd. v. Petersen (In re Petersen)*, 296 B.R. 766, 790 (Bankr. C.D. Ill. 2003); *Fosco*, 289 B.R. at 93; *Bostrom*, 286 B.R. at 359; *Bailey*, 147 B.R. at 162.

Turning to the matter at bar, the Creditor first must establish that the Debtor made a statement under oath. A debtor's petition, schedules, and statement of financial affairs all constitute statements under oath for purposes of § 727(a)(4). *Broholm*, 310 B.R. at 880; *Costello*, 299 B.R. at 899; *Bostrom*, 286 B.R. at 360; *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 574 (Bankr. N.D. Ill. 2000). Thus, the Court finds that the Debtor's Schedules and Statement of Financial Affairs filed in this case constitute statements made under oath. Hence, there is no dispute that this element has been met.

Second, the Creditor must show that the statements made by the Debtor were false. Whether a debtor made a false oath within the meaning of § 727(a)(4)(A) is a question of fact. *Costello*, 299 B.R. at 899; *Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein)*, 272 B.R. 463, 477 (Bankr. N.D. Ill. 2001). A false oath may include a knowing and fraudulent omission. *Rafool v. Wilson (In re Wilson)*, 290 B.R. 333, 337 (Bankr. C.D. Ill. 2002); *Britton Motor Serv., Inc. v. Krich (In re Krich)*, 97 B.R. 919, 923 (Bankr. N.D. Ill. 1988) ("Filing of false schedules with material omissions or misrepresentations with an intent to mislead creditors and the trustee as to a debtor's actual financial condition constitutes a false oath under section 727(a)(4)(A)."). It is a debtor's role to carefully consider the questions posed and answer them accurately and completely. *Armstrong v. Lunday (In re Lunday)*, 100 B.R. 502, 508 (Bankr. D. N.D. 1989).

-19-

The Court finds that the Schedules and Statement of Financial Affairs contain false statements. Specifically, the Debtor failed to accurately disclose his income for tax year 2003. The Debtor admitted that his income reflected on the Statement of Financial Affairs for 2003 is approximately $30,000.00 less than the amount reported by his employers. The Debtor lists his gross income for 2003 as $37,851.00, but for that same year, his W-2 form from Ashland lists his income as $55,350.00. The Debtor filed an amended Statement of Financial Affairs that listed his income as -$1,109.00. Even this amendment incorrectly reflects his income for that year. Based on the W-2 form, the Debtor's gross income was at least $55,350.00 and may be even higher as a result of his ownerships interests in his business entities, namely Ashland, Lake, Lakeview, Robert Fink M.D. S.C., and the Michigan Street Venture. Moreover, the Statement of Financial Affairs and the amended Statement of Financial Affairs list his gross income for the year 2004 as $36,000.00. However, the Debtor's 1099 income tax form from Ashland reflects his income for that same year as $48,000.00. Accordingly, the Debtor's Statement of Financial Affairs and amended Statement of Financial Affairs fail to accurately and completely disclose his income for the years 2003 and 2004.

Further, the Debtor admitted that he failed to list his ownership interests in Ashland, Lake, Robert Fink M.D. S.C., and the Robert Fink 1997 revocable trust in the original Statement of Financial Affairs. The Debtor contends that his failure to disclose his ownership interests in the Robert Fink M.D. S.C. and Ashland entities is excused because both entities were merged and then transferred to his father in 2004. While the Debtor did disclose Ashland, Lake, and Robert Fink M.D. S.C. in his amended Statement of Financial

-20-

Affairs, he did not list his interest in the Robert Fink 1997 revocable trust in that amendment. The Statement of Financial Affairs requires the Debtor to list any property transferred into a self-settled trust or similar device in the ten years preceding the bankruptcy filing. Thus, the Debtor was required to disclose that asset. Moreover, the Debtor failed to disclose that he received $52,500.00 from the Lake checking account in the eight months preceding the bankruptcy petition date. Finally, the Debtor failed to disclose the existence of or the income he received from the Michigan Street Venture. The Debtor states that this failure to disclose this entity was not a false oath because it allegedly lost money in 2003.

The Debtor cannot feign ignorance as to the value of these assets or the payments he admittedly received. Unfortunately for the Debtor, this excuse has been rejected by the Seventh Circuit, which opined that "[d]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992) (revocation of discharge action under 11 U.S.C. § 727(d)(2)). Thus, when a debtor is in doubt concerning disclosure, it is clear that the debtor is obligated to disclose. *See Richardson v. Von Behren (In re Von Behren)*, 314 B.R. 169, 179 (Bankr. C.D. Ill. 2004). "Debtors have the ultimate responsibility for the accuracy of the information contained in their schedules, which cannot be avoided by playing ostrich." *Wilson*, 290 B.R. at 340.

The Debtor filed an amended Schedule B and amended Statement of Financial Affairs several days after the instant motion was filed. Those amended documents reflect his interest in the Michigan Street Venture as well as his interests in Ashland, Lakeview, Robert Fink M.D. S.C., and Lake. Nevertheless, the substantial omissions in the Debtor's

·21·

Schedules and Statement of Financial Affairs cannot be excused by way of amendment. *See Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 249 n.6 (Bankr. N.D. Ill. 2005). Subsequent voluntary disclosure through testimony or an amendment to the schedules or statement of financial affairs does not expunge the falsity of the prior oath. *Bailey*, 147 B.R. at 165. "The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive." *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985); *see also Mazer v. United States*, 298 F.2d 579, 582 (7th Cir. 1962) (noting that the offense of false oath and false swearing cannot be avoided by amending the schedule).

Although a debtor cannot necessarily redress a false oath by making a subsequent correction, *Costello*, 299 B.R. at 899-900; *Bailey*, 147 B.R. at 165, the fact that a debtor comes forward with omitted material of his own accord is evidence that there was no fraudulent intent in the omission. *In re Brown*, 108 F.3d 1290, 1295 (10th Cir. 1997). The Debtor made an attempt to amend his Schedule B and Statement of Financial Affairs to correct some of the glaring misstatements and omissions discussed *supra* only after the Creditor filed the instant motion. Even with the amendments, the Debtor did not disclose the $52,500.00 that Lake transferred to him in the eight months preceding the bankruptcy case. Moreover, the amendments do not accurately reflect his income in the two years preceding the case. The amended Schedule B and Statement of Financial Affairs do not cure the numerous misstatements and omissions. That the Debtor waited until the Creditor filed this motion to correct some of these errors after this adversary proceeding brought them to

-22-

light demonstrates that full and honest disclosure was not important to this Debtor. *See*

*Olbur*, 314 B.R. at 746.

In summary, the Court finds that the Debtor made false statements and omissions in

the Schedules and Statement of Financial Affairs. Thus, the Creditor has established this

element.

Third, the Creditor must establish that the false statements and omissions were

knowingly made. The Debtor, an orthopaedic surgeon, is a highly educated, experienced,

and articulate business person, who knew or should have known that the answers to the

Schedules and Statement of Financial Affairs were incomplete and inaccurate as previously

discussed. This is the Debtor's fourth bankruptcy case in the past four years. Therefore, he

is undoubtedly familiar with the bankruptcy process and its requirements. As discussed

*supra*, the Debtor failed to satisfactorily explain his misstatements and omissions. Hence,

the Court finds that this element has been satisfied.

Fourth, the Creditor must prove that the Debtor made the false statements with

fraudulent intent. "Intent to defraud involves a material representation that you know to be

false, or, what amounts to the same thing, an omission that you know will create an

erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). To find the requisite

degree of fraudulent intent, a court must find that the debtor knowingly intended to defraud

or engaged in behavior that displayed a reckless disregard for the truth. *Yonikus*, 974 F.2d

at 905; *Bailey*, 147 B.R. at 164-65 (*citing Yonikus*). Direct evidence of intent to defraud may

not be available. *Costello*, 299 B.R. at 900. Thus, the requisite intent under § 727(a)(4)(A)

may be inferred from circumstantial evidence or by inference based on a course of conduct.

-23-

*See Yonikus*, 974 F.2d at 905; *Carlson*, 231 B.R. at 655; *Costello*, 299 B.R. at 900. Reckless

disregard means "not caring whether some representation is true or false. . . ." *Chavin*, 150

F.3d at 728. If a debtor's bankruptcy schedules reflect a "reckless indifference to the truth"

then the objecting creditor seeking denial of the discharge need not offer any further evidence

of fraud. *Costello*, 299 B.R. at 900; *Calisoff*, 92 B.R. at 355.

The Court readily infers the requisite fraudulent intent from the totality of the

evidence which includes the Debtor's admissions in his answer to the complaint. The Debtor

admitted that he knew of the ownership interests in Ashland, Lake, Robert Fink M.D. S.C.,

and the Robert Fink 1997 revocable trust. Further, he admitted that his income for 2003 and

2004 was approximately $30,000.00 less than the amount reported by his employers.

Further, the Debtor admitted that he failed to disclose that he received $52,500.00 from the

Lake checking account in the eight months preceding the bankruptcy petition date. Finally,

the Debtor admitted that he failed to disclose the existence of or the income received from

the Michigan Street Venture. Nevertheless, the Debtor failed to include these assets on his

original Schedules and Statement of Financial Affairs. These omissions and misstatements

by the Debtor show a pattern of deception. At the very least, the Debtor demonstrated a

reckless disregard of or indifference to the truth of his situation. *See Croge v. Katz (In re*

*Katz)*, 203 B.R. 227, 235 (Bankr. E.D. Pa. 1996) (noting that the existence of more than one

falsehood, plus the failure to clear up all inconsistencies when filing amendments may

constitute a reckless disregard and may be sufficient for denial of discharge). The

misstatements and omissions here were not insignificant. The errors and omissions in the

Schedules and Statement of Financial Affairs, when viewed collectively for their cumulative

·24·

effect, suggest fraudulent intent on the part of the Debtor, which the Court can infer on this record.

While the Court does not expect every individual item of clothing or piece of furniture to be scheduled and valued, or that each scheduled liability be listed with absolute arithmetic precision, there comes a point when the aggregate errors and omissions cross the line past which a debtor's discharge should be denied. *See Bostrom*, 286 B.R. at 364 (finding that the debtors' failure to disclose three parcels of real property in Florida, a fur coat, three television sets, a stereo system, and substantial income constituted grounds for denial of their discharge); *A.V. Reilly Int'l, Ltd. v. Rosenzweig (In re Rosenzweig)*, 237 B.R. 453, 457 (Bankr. N.D. Ill. 1999) (finding that the debtor's failure to disclose an income tax refund and a second computer constituted grounds for denial of his discharge); *Netherton v. Baker (In re Baker)*, 205 B.R. 125, 133 (Bankr. N.D. Ill. 1997) (finding that the debtor's failure to disclose his tropical fish hobby and its assets, including over 100 fish tanks, constituted grounds for denial of his discharge). Wherever that fine and elusive line is, the Court is of the view it has been crossed here. The Court can understand that occasionally there may be an innocently omitted de minimus asset, but here the failure to disclose and the errors in what was disclosed are simply too substantial to overlook or attribute to mere negligence or inadvertence on the part of the Debtor.

Finally, the Creditor must show that the statements related materially to the bankruptcy case. A debtor's false oath must relate to a material matter before it will bar a discharge in bankruptcy. *In re Agnew*, 818 F.2d 1284, 1290 (7th Cir. 1987). "[T]he test for materiality of the subject matter of a false oath is whether it 'bears a relationship to the

-25-

bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Bailey*, 147 B.R. at 162 (*quoting In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)); *see also Wilson*, 290 B.R. at 337; *Holstein*, 272 B.R. at 477. A false oath may be material even though it does not result in any detriment or prejudice to the creditor. *Von Behren*, 314 B.R. at 180.

Certainly, the Debtor's initial failure to disclose his ownership interests in Ashland, Lake, Robert Fink M.D. S.C., and the Robert Fink 1997 revocable trust; his omission of approximately $30,000.00 in income; his failure to disclose the receipt of cashed checks totaling $52,500.00 from Lake; and his failure to list his interest in and income from the Michigan Street Venture bears a direct relationship to the bankruptcy estate and concerns the discovery of assets and the disposition of property. Hence, the Court finds that the above discussed misstatements and omissions are material to the bankruptcy case, and therefore, the Creditor has satisfied this element.

After considering the totality of the evidence and the admissions made by the Debtor, the Court finds that the Creditor has shown by a preponderance of the evidence each element under § 727(a)(4)(A). Therefore, the Court denies the Debtor's discharge on this ground. The Court finds that the facts clearly entitle the Creditor to a judgment under Count I of the complaint.

## V. CONCLUSION

For the foregoing reasons, the Court grants the Creditor's motion for judgment on the pleadings with respect to Counts I and III of the complaint and denies the Debtor's discharge

-26-

under §§ 727(a)(3) and 727(a)(4)(A). A status hearing on Count II of the complaint is set for

September 29, 2006 at 10:00 a.m.

This Opinion constitutes the Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be

entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: _9/5/6_

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Baccala Realty, Inc. v. Robert J. Fink
**Adversary No.  06 A 00903**

Paul H. Millewich, Esq.
Steven H. Mevorah & Associates
123 E. Lake Street, Suite 200
Bloomingdale, IL 60108

David R. Brown, Esq.
Springer, Brown, Covey, Gaertner & Davis
400 S. County Farm Road, Suite 330
Wheaton, IL 60187

Kevin C. Driscoll, Esq.
Barnes & Thornburg
1 North Wacker Drive, Suite 4400
Chicago, IL 60606

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606